UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**KARRIE C. DAUGHTRY,**

  **Plaintiff,**

v.                Case No. 8:08-cv-2480-T-TBM

**MICHAEL J. ASTRUE,**
**Commissioner of the United States**
**Social Security Administration,**

  **Defendant.**
              /

## O R D E R

The Plaintiff seeks judicial review of the denial of her claim for Social Security disability benefits. For the reasons set out herein, the decision is affirmed.

### I.

Plaintiff was thirty-two (32) years of age at the time of her administrative hearing in September 2007. Plaintiff has a high school education and ten months of college. Her past relevant work was as a secretary, sales clerk, hostess/server, and cashier/checker. Plaintiff applied for disability benefits in January 2005, alleging disability as of October 27, 2003, by reason of severe back and neck pain, depression and anxiety. The Plaintiff's application was denied originally and on reconsideration.

The Plaintiff, at her request, then received a *de novo* hearing before an Administrative Law Judge ("ALJ"). The Plaintiff was represented at the hearing by counsel and testified in her own behalf. Additionally, a vocational expert was called by the ALJ.

In essence, Plaintiff testified that she is unable to work due to constant pain as a result of three serious accidents, hypoglycemia syncope, and bipolar disorder. Plaintiff's first accident was in October 2003 when her vehicle collided with a trailer carrying a Bobcat tractor. Her injuries caused severe back pain that radiated down her right leg. She underwent therapy for ten months. During that period of time, she could sit for twenty minutes and stand for three to four minutes. After a couple of hours of alternating positions, she would have to lie down for an hour or so. She could only lift ten to fifteen pounds. She would have problems with stooping, kneeling, crouching, or crawling because of the pain in her back that goes down her right leg.

Even before this accident, she was treating for her mental problems with Dr. Devine. She was depressed and had racing thoughts and could not make rational decisions. She was diagnosed as bipolar. She continues to see this doctor. He has treated her through medication.

She had another accident in July 2004. She fell in a parking lot and broke her nose, cheek, and jaw. She attributes this to hypoglycemia syncope. She fell again at a Wal-mart about four months later. This accident interfered with her therapy because she had to start dealing with the plastic surgery for her face. In April 2005, she was involved in another accident in which the driver's side of her vehicle was struck by a truck. She was injured in

2

her neck, shoulder, back, and cut all over by the glass. She began eight months of assorted therapy.

She takes Cymbalta, Topamax, Vicodin, and Ritalin daily. The medicine causes her confusion, loss of memory, drowsiness, sleepiness, and agitation.

During the pertinent period under consideration and once Plaintiff was cleared to drive, she would take her kids the short distance to school and pick them up each day. Plaintiff would cook and clean as she could. If she needed to lie down and nap, she would do so. She naps most days as her medication makes her sleepy. She attends church. When asked if she could do a sedentary job of any sort, Plaintiff indicated that she could not as she would miss too much work and she simply cannot finish things. (R. 706-20).

Joyce Courtright, a vocational expert (hereinafter "VE"), first classified Plaintiff's past work as sedentary to light, semiskilled to skilled. On a hypothetical assuming that Plaintiff could perform simple routine, repetitive, light exertional work with a number of restrictions to account for seizures, the VE opined that Plaintiff could not perform her past work, but could do the work of a cashier II, small parts assembler, and final inspector. As for the latter two types of work, they include some sedentary jobs as well. If there was also a need for a sit/stand option, a lesser number (15% less) of these same jobs would be available. However, if Plaintiff would experience uncontrollable crying for a few minutes a couple times during the day, the cashier II job would be affected but not the assembly or inspection work. If she were to miss greater than one day a month, she could not work at these jobs. If

3

Plaintiff's pace was reduced because of her medication by more than 15 minutes per hour, it could affect the availability of the assembly or inspection work. (R. 720-25).

Also before the ALJ were medical records outlining the Plaintiff's medical history. These matters are addressed adequately by the parties' memoranda and are set forth herein as necessary. Pertinent to this claim, Plaintiff's date last insured for benefits was June 30, 2005.

By his decision of October 24, 2007, the ALJ determined that while Plaintiff had severe impairments through her date last insured related to degenerative disc disease of the thoracic spine, status post healed facial fractures, bipolar disorder, and post-traumatic stress disorder (PTSD), she nonetheless had the residual functional capacity to perform simple, routine, repetitive light exertional work with restrictions to accommodate seizures. Upon this finding and the testimony of the VE, the ALJ concluded that Plaintiff could perform jobs available to her in the local and national economy. Upon this conclusion, the Plaintiff was determined to be not disabled. (R. 11-29). The Appeals Council denied Plaintiff's request for review.

II.

In order to be entitled to Social Security disability a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment," under the terms of the Act, is one that "results from anatomical, physiological, or

psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* at § 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See id.* at § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Commissioner must apply the correct law and demonstrate that he has done so. While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. *Celebrezze v. O'Brient*, 323 F.2d 989 (5th Cir. 1963). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence, but is limited to determining whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that

5

the claimant is not disabled. *Miles*, 84 F.3d at 1400; *Bloodsworth v. Heckler*, 703 F.2d 1233 (11th Cir. 1983).

The scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988).

### III.

The Plaintiff asserts on this appeal that "[t]he Commissioner erred in failing to give the opinion of the Plaintiff's treating physician, Robert N. Baskin, MD, controlling weight pursuant to Social Security Ruling 96-2." (Doc. 22 at 6). In particular, she cites the doctor's physical residual functional capacity ("RFC") assessment dated June 27, 2007.[1] *See* (R. 192-96). By her argument, the ALJ overlooked positive findings in the doctor's reports which supported this assessment and instead cited only those portions of Dr. Baskin's record that supported his reasoning. In support, she cites to a variety of subjective complaints she made to this doctor and urges that the ALJ's conclusion that the RFC assessment was inconsistent with the doctor's own clinical findings is simply incorrect. *See* (Doc. 22 at 7-8). Further, clinical findings reflected in notes from Dr. Edward Jacobson for treatment rendered in 2003 and 2004 provide additional support to the assessment by Dr. Baskin and further undermine the ALJ's reasons for discounting his assessment. *Id.* at 9.

---

[1]Suffice it to say that under this RFC assessment, Plaintiff is physically disabled from work at any exertional level. Citing *Boyd v. Heckler,* 704 F.2d 1207 (11th Cir.1983), Plaintiff urges that although the RFC assessment is dated well after Plaintiff's date last insured, it remains relevant.

6

In response, the Commissioner argues the ALJ appropriately gave Dr. Baskin's RFC assessment little weight on the bases that such was not supported by objective clinical findings and was inconsistent with the medical record as a whole. He urges that there are very few clinical findings in the treatment notes during 2004 and 2005 beyond complaints of muscle pain and joint pain. There were no indications of functional limitations. Objective testing suggested very limited findings. *See* (R. 530-39). For instance, an MRI of the thoracic spine in January 2005 showed only mild degenerative changes; one from November 2004 was essentially normal; and the lumbar MRI from September 2004 was likewise. *Id.* An MRI taken after Plaintiff's date last insured, in October 2006, was again essentially normal. (R. 282). By the Commissioner's review of the doctor's records, Plaintiff's motor function was frequently noted as normal and Plaintiff herself had very few complaints of functional limitations and none directed by the doctor before the 2007 RFC assessment. Furthermore, the RFC assessment was prepared more than two years after the Plaintiff's date last insured. Nonetheless, it was properly considered by the ALJ. (Doc. 23 at 5-12). Similarly, the Commissioner urges that the ALJ properly evaluated Dr. Jacobson's treatment notes which likewise failed to call for a finding of disability. (Doc. 23 at 12-15).

When considering a treating physician's testimony, the ALJ must ordinarily give substantial or considerable weight to such testimony unless good cause is shown to the contrary. *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986); *see also* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Such a preference is given to

treating sources because such sources are likely to be best situated to provide a detailed and longitudinal picture of the medical impairments. *Lewis*, 125 F.3d at 1440. Furthermore, the ALJ must specify the weight given to the treating physician's opinion or reasons for giving the opinion no weight, and the failure to do so is reversible error. *MacGregor*, 786 F.2d at 1053. Good cause for rejecting a treating source's opinion may be found where the treating source's opinion was not bolstered by the evidence, the evidence supported a contrary finding, or the treating source's opinion was conclusory or inconsistent with his or her own medical record. *Phillips*, 357 F.3d at 1240-41 (citing *Lewis*, 125 F.3d at 1440); *Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987).

After review of the medical evidence and essentially for the reasons set forth by the Commissioner, I conclude that the ALJ fairly considered the findings and conclusions of Plaintiff's treating doctors and discounted the same for reasons fully supported by the medical evidence.

As the decision reflects, the ALJ gave a thorough review of Dr. Baskin's medical records and squarely set forth his opinions from June and July 2007. (R. 23). In addressing those opinions, the ALJ found them inconsistent with the whole of the medical evidence and the doctor's own objective clinical findings. (R. 25). By his review, the doctor's June 2007 RFC assessment indicated inconsistent findings. He noted that Plaintiff's pain was stated to be no more than "moderate" and yet highly restrictive limitations were imposed. As for clinical findings, the assessment cited only "tenderness to palpation" to spinal muscles. By the ALJ's review, the severe limitations for sitting, standing and walking were inconsistent

with the objective and clinical findings and Plaintiff's own reports. The ALJ also found Plaintiff's pain complaints as set forth in her treatment records inconsistent and unsupportive of the degree of functional limitation assessed for her concentration and attention. *Id.* By my consideration, these conclusions are necessarily considered in the context of the ALJ's review of the whole of the medical evidence. In such light, they are more than adequate to state a basis for discounting Dr. Baskin's RFC assessment and other opinion evidence. While the Plaintiff complains that the ALJ only addressed findings in that record supporting his conclusion to discount the doctor's opinions and failed to address those favorable to her position, the evidence of such recited in Plaintiff's brief is unconvincing. On the contrary, the evidence Plaintiff cites is mostly her subjective complaints as reflected in those notes, not contrary, favorable findings.[2] Significantly, she provides no counterpoint to the numerous objective tests or clinical findings within this medical record as such reviewed by the ALJ.[3]

The decision similarly reflects that the ALJ fairly assessed the treatment notes from Dr. Jacobson, who treated Plaintiff after her first accident in 2003 and into 2004. (R. 18-19). Plaintiff urges that the findings reflected by this doctor bolster the RFC assessment by Dr. Baskin and support her position that the ALJ's conclusion that his RFC assessment was

---

[2]This is not to say that other notes from this doctor were consistent with his conclusion that Plaintiff was limited such that she could not work. *See e.g.* (R. 543). But on the whole, the ALJ could find that the doctor's notes were inconsistent with the severely limiting restrictions set forth in the RFC assessment at issue.

[3]These findings are fairly well cited in the Commissioner's brief and are not repeated herein. An objective review of Dr. Baskins' notes, the objective test results contained therein, and his clinical findings do not reveal debilitating conditions in the Plaintiff's spine, and Plaintiff fails to demonstrate otherwise on this appeal.

inconsistent with the whole of the record is simply wrong. On the contrary, by my review of Dr. Jacobson's records, they actually support the ALJ's conclusion that Baskin's RFC assessment was too extreme and is unsupportable. While Dr. Jacobson treated Plaintiff for mid-back pain, his clinical findings did not reveal significantly limiting conditions, his care was conservative, and treatment appeared to help. As with the objective testing during Dr. Baskin's care, this doctor's notes reflect that objective testing during his period of care was not remarkable. Further, the doctor gave no clear statement concerning functional limitations. In short, these records do not support the limitations ultimately assessed by Dr. Baskin and on the whole support the ALJ's decision to discount the same.

As set forth above, an ALJ may discount the opinion evidence from a treating doctor upon adequate showing of good cause to do so. Here, I conclude that he has done so.

IV.

For the foregoing reasons, the decision of the Commissioner of the United States Social Security Administration is in accordance with the correct legal standards and is otherwise supported by substantial evidence. The decision is affirmed. Accordingly, the Clerk is directed to enter Judgment in favor of the Defendant and to close the file.

**Done and Ordered** at Tampa, Florida, this 11th day of March 2010.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of record